# Exhibit B

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing
and service of pleadings or other documents as required by law. This form must be filed by the
plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant
to section 25.075, Florida Statutes. (See instructions for completion.)

**I.    CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u>   COUNTY, FLORIDA

<u>Rising Phoenix Holding Corporation, Tidal Basin Government Consulting, LLC</u>
Plaintiff                                          Case # _____
                                                   Judge _____

vs.
<u>Richard S. Ross</u>
Defendant

**II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of
the claim is requested for data collection and clerical processing purposes only. The amount of the claim
shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

**III.    TYPE OF CASE**    (If the case fits more than one type of case,   select the most
definitive category.) If the most descriptive label is a subcategory (is indented under a broader
category), place an x on both the main category and subcategory lines.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 11/17/2022 08:24:54 AM.****

## CIRCUIT CIVIL

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☒ Other
    ☐ Antitrust/Trade regulation
    ☒ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

## COUNTY CIVIL

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  <u>8</u>

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Nathan Berman</u>          Fla. Bar # <u>329230</u>
       Attorney or party                 (Bar # if attorney)

<u>Nathan Berman</u>           <u>11/17/2022</u>
 (type or print name)         Date

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

Rising Phoenix Holding Corporation
*and*
Tidal Basin Government Consulting, LLC,

  *Plaintiffs*,

v.

Richard S. Ross,

  *Defendant*.

Case No. _____

JURY TRIAL DEMANDED

## **COMPLAINT**

  Plaintiffs Rising Phoenix Holding Corporation and Tidal Basin Government Consulting, LLC, by and through their attorneys, sue Defendant Richard S. Ross for violations of Florida common law and allege as follows:

## **NATURE OF THE CASE**

  1.  Rising Phoenix Holding Corporation ("Rising Phoenix") owns three of the nation's leading disaster preparedness and recovery firms. It is led and managed by a diverse team of multidisciplined professionals with years of experience at the federal, state, and local emergency management levels. Rising Phoenix leverages its expertise to help communities prepare for and recover from emergencies, including natural disasters and terrorist attacks.

  2.  In 2021, one of Rising Phoenix's subsidiaries, Plaintiff Tidal Basin Government Consulting, LLC ("Tidal Basin"), engaged in efforts to fight COVID-19 by entering into a relationship with the State of Florida's Division of Emergency Management to support Florida's COVID-19 vaccination program.

3.      As part of that work, Tidal Basin engaged MCI BPO, LC ("MCI"), a company specializing in customer contact centers and call agent staffing, as a subcontractor.

4.      On or around October 4, 2021, a payment of roughly $29 million from Tidal Basin to MCI for subcontracting services performed by MCI was due.

5.      Tidal Basin intended and attempted to send full payment to MCI by means of an electronic funds transfer. Tidal Basin sent this money to an account it believed belonged to MCI.

6.      Instead, Tidal Basin and its computer systems were the victim of a sophisticated business email compromise fraud.

7.      On or about August 6, 2021, yet unidentified individuals (the "Hackers") had gained unauthorized access to the email account of a Rising Phoenix executive responsible for key aspects of the MCI contract.

8.      From approximately October 4 to October 26, 2021, the Hackers executed a fraud on Rising Phoenix and Tidal Basin. By impersonating executives from MCI, the Hackers fraudulently induced Tidal Basin to transfer the approximately $29 million intended for MCI from Tidal Basin's bank account at NBT Bank, N.A. to an account at a Regions Bank branch in Fort Lauderdale, Florida.

9.      The Florida bank account that received the fraudulently transferred funds was controlled by Defendant Richard S. Ross ("Ross"), a Florida attorney.

10.     From Ross's account, the funds were transferred to numerous other bank accounts in the United States and Mexico, without Plaintiffs' authorization or knowledge, defrauding Rising Phoenix and Tidal Basin of their funds.

11.     The Regions Bank account controlled by Ross is an Interest on Trust Account ("IOTA"), a unique type of bank account that can be operated only by attorneys to hold clients'

and third parties' funds in trust. When a client's or third party's funds are deposited into such an account, a fiduciary duty is created, owed by the attorney account holder to that client or third party.

12.     The vast majority of the funds stolen from Rising Phoenix and Tidal Basin have not been located or recovered, and the United States and Mexican governments have thus far been unable to identify the Hackers and bring them to justice.

13.     Ross knew or should have known of the Hackers' fraud and, through malfeasance and/or negligence, directly or indirectly participated in and assisted the fraud.

14.     Plaintiffs seek an award of monetary damages against Ross and any additional relief the Court deems just and appropriate.

## THE PARTIES

15.     Plaintiff Rising Phoenix Holding Corporation is a New York holding company with a controlling ownership interest in Tidal Basin Government Consulting, LLC, Tidal Basin Caribe, LLC, and Adjusters International, Ltd. Rising Phoenix is operated from its headquarters located at 126 Business Park Drive, Utica, New York 13502. Its principal place of business is in New York. Rising Phoenix is registered to do business in Florida.

16.     Plaintiff Tidal Basin Government Consulting, LLC is a District of Columbia limited liability company that is a subsidiary of Rising Phoenix. It is operated from its headquarters located at 126 Business Park Drive, Utica, New York 13502. Its principal place of business is in New York. Tidal Basin is registered to do business in Florida.

17.     Defendant Richard S. Ross is a natural person domiciled and residing at 525 NE 14th Avenue, Fort Lauderdale, Florida 33301. Ross is an attorney licensed to practice in the State of Florida since October 20, 1984 (Fla. Bar No. 436630). Ross has also been a registered

practitioner with the United States Patent and Trademark Office since December 14, 1984 (Registration No. 31,658). On information and belief, Ross practices law from an office located at 4801 South University Drive, #237, Fort Lauderdale, Florida 33328.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction under Fla. Stat. §§ 26.012(2)(a), 34.01(1)(c) (2022), because this is an action for damages in excess of $30,000, exclusive of interest, attorneys' fees, and costs.

19. This Court has personal jurisdiction over Richard S. Ross because he resides in Fort Lauderdale, Florida and practices law in Broward County, Florida.

20. Venue is proper in Broward County because Ross resides in Broward County, and the key series of transactions or occurrences out of which Plaintiffs' causes of action arise occurred in Broward County.

## FACTS

***Hackers perpetrate a fraud against Rising Phoenix and Tidal Basin, resulting in $29 million being transferred to Defendant Richard S. Ross's trust account at Regions Bank.***

21. On or around February 23, 2021, Plaintiff Tidal Basin was engaged by the State of Florida's Division of Emergency Management to administer several aspects of Florida's COVID-19 response.

22. As part of that project, Tidal Basin engaged MCI, a company specializing in customer contact centers and call agent staffing, as a subcontractor to, among other things, establish a high-volume call center and send SMS text messages to various groups of people in Florida at the State of Florida's direction. MCI satisfactorily completed the work for which it had been engaged.

4

23.     On or around October 4, 2021, Tidal Basin owed MCI $29,583,354.63 for those subcontracting services.

24.     Prior to October 4, 2021, without Plaintiffs' knowledge, the Hackers had initiated a plot to defraud Rising Phoenix/Tidal Basin of the funds owed to MCI.

25.     In furtherance of their fraudulent plot, the Hackers unlawfully gained access to the email account of an executive at Rising Phoenix and created spoof email addresses that allowed them to impersonate executives at both Rising Phoenix and MCI. As a result, the Hackers were able to impersonate MCI's CEO in email correspondence with Rising Phoenix/Tidal Basin and to impersonate Rising Phoenix's executives in email correspondence with MCI.

26.     Specifically, the Hackers illegally accessed the email account of Rising Phoenix's Vice President and Project Finance Chief (hereinafter, the "Rising Phoenix VP"), who handled many of the details of the subcontract with MCI, including payment processing. This allowed the Hackers to send emails from the Rising Phoenix VP's account and to read any emails he received all without the Rising Phoenix VP's knowledge. On information and belief, the Hackers used this access to learn that a large payment from Rising Phoenix to MCI was due and to devise a scheme to misappropriate those funds.

27.     The Hackers created a spoof email address closely resembling the true email address of MCI's CEO. The address enabled them to impersonate Rising Phoenix/Tidal Basin in communications with MCI's CEO, who handled all payment-related communications with Rising Phoenix/Tidal Basin on MCI's behalf. The Hackers sent emails to Rising Phoenix/Tidal Basin with payment information that appeared to be from MCI's CEO. When Rising Phoenix's executives responded to those emails, the responses went to the spoof email account controlled by the Hackers, rather than to the MCI CEO's true email account.

5

28.     The Hackers simultaneously used their access to the Rising Phoenix VP's account to send emails to the true MCI executives regarding the payment and assuring them that it would soon be transferred. The MCI executives did not know they were corresponding with the Hackers.

29.     The Hackers also created a spoof email that enabled them to impersonate Rising Phoenix's President, who handled certain aspects of the MCI payment. The Hackers copied this account on emails that they sent from the Rising Phoenix VP's account to MCI executives. When MCI executives responded to the spoof emails, the responses went to the spoof email account controlled by the Hackers, rather than to Rising Phoenix's President's true email account.

30.     Upon information and belief, the Hackers regularly monitored the Rising Phoenix VP's email account, which allowed them to hide or delete incoming messages from MCI before the Rising Phoenix VP could see them.

31.     On or around October 5, 2021, the Hackers used the spoof email impersonating MCI's CEO to instruct the Rising Phoenix VP to send final payment for MCI's subcontracting services via Automated Clearing House ("ACH") transfer to a Regions Bank account in MCI's name.

32.     Unbeknownst to Rising Phoenix and Tidal Basin, the account number the Hackers provided did not belong to MCI.

33.     In reality, the account number provided was for an Interest on Trust Account ("IOTA") that belonged to and was controlled by Defendant Ross.

34.     IOTA accounts are trust accounts regulated by the Florida Bar. Each Florida-licensed attorney is required to be familiar with and comply with the Rules Regulating Trust Accounts, as adopted by the Supreme Court of Florida. *See* R. Regulating Fla. Bar 4-1.15; R. Regulating Fla. Bar 5-1.1 cmt.

35.     On or around October 6, 2021, pursuant to the Hackers' fraudulent instructions, Rising Phoenix/Tidal Basin initiated the transfer of $29,583,354.63 from Tidal Basin's account at NBT Bank, N.A. to Ross's IOTA account at Regions Bank, which Rising Phoenix and Tidal Basin believed belonged to MCI. According to Regions Bank, the "branch of account" where the account was located is in Fort Lauderdale, Florida.

36.     The transfer instructions identified MCI as the account holder by name but specified the account number associated with Ross's IOTA account.

***After the funds arrive in Defendant Richard S. Ross's IOTA account, Regions Bank ignores the discrepancies and notifications in the transfer and allows Ross to initiate a series of wire transfers, dissipating the funds to bank accounts mostly outside of the United States.***

37.     On or around October 7, 2021, an individual purporting to be Richard S. Ross contacted Regions Bank by telephone on at least two occasions, attempting to access the IOTA account to which the funds had been sent. Regions Bank recorded the calls.

38.     The caller asked a Regions Bank employee about the status of funds in his purported personal account and in the IOTA account to which Rising Phoenix's funds had been transferred.

39.     The caller, who spoke English with a pronounced accent, misstated the name on the account and was unable to immediately recall his purported birthdate when asked to verify it. The caller also could not verify the telephone number associated with the IOTA account.

40.     Ross has reported to law enforcement that he did not make the telephone calls described above.

41.     After receiving these suspicious calls, Regions Bank neither placed a hold on the account nor launched an investigation into the calls, the IOTA account, or the recently deposited funds.

***Defendant Richard S. Ross fails to conduct reasonable diligence and transfers the $29 million to various foreign bank accounts.***

42.     Ross later admitted to law enforcement that he was aware the $29,583,354.63 was deposited into his IOTA account, and he claimed to believe the funds were deposited as the result of a legitimate business transaction for an alleged client.

43.     On information and belief, Ross's customary practice of law does not involve transactions entailing the transfer of eight-figure sums to his IOTA account.

44.     On information and belief, Ross did not provide legal services before the transfer that would have led a reasonable attorney exercising appropriate diligence to believe that an eight-figure sum would be transferred to his IOTA account and then shortly after transferred to several foreign banks for legitimate reasons.

45.     When an attorney receives funds in an IOTA account in which a client or third person has an interest, the attorney must promptly notify the client or third person. R. Regulating Fla. Bar 5-1.1(e). Ross never notified Rising Phoenix or Tidal Basin that their funds had been deposited into his IOTA account.

46.     When an attorney's IOTA account contains an unidentifiable accumulation of funds, those funds must be held for their missing owners and so designated. R. Regulating Fla. Bar 5-1.1(i). Ross neither held the funds for Rising Phoenix and Tidal Basin nor designated them as belonging to an unidentified owner.

47.     If an attorney is unaware of the beneficial owner of an unidentifiable accumulation of funds, he must make a diligent search and inquiry to determine the beneficial owner of the funds or to identify the owner's address. *Id.* Ross never made a diligent inquiry to determine the beneficial owner of the funds or to identify the owner's address.

48.     If diligent inquiry fails to identify the missing owner or identify the funds, such funds must be disposed of as provided under applicable Florida law, *id.*, namely Chapter 717 of the Florida Statutes, which requires that the funds be delivered into the custody of Florida's Department of Financial Services. Ross failed to dispose of the funds in accordance with applicable Florida law.

49.     Instead, Ross directed a series of outgoing wire transfers from the IOTA account.

50.     From on or about October 12 to October 19, 2021, at Ross's instruction, Regions Bank executed or attempted to execute a series of wire transfers, disseminating the $29 million from Ross's IOTA account to various banks, mostly in Mexico, as reflected in the below table:

| Date | Amount | Destination Bank |
|---|---|---|
| 10/12/2021 | $980,000.00 | Banco Monex, Mexico |
| 10/12/2021 | $980,000.00 | HSBC Mexico Institucion DE B |
| 10/13/2021 | $4,200,000.00 | HSBC Mexico Institucion DE B |
| 10/15/2021 | $4,800,000.00 | Banco Monex, Mexico |
| 10/15/2021 | $5,800,000.00 | HSBC Mexico Institucion DE B |
| 10/15/2021 | $8,000,000.00 | Scotiabank Inverlat, Mexico |
| 10/18/2021 | $4,000,000.00 | Banco Monex, Mexico |
| 10/18/2021 | $4,000,000.00 | HSBC Mexico Institucion DE B |
| 10/19/2021 | $1,500,000.00 | Santander Bank, N.A. Wilmington, DE |
| 10/19/2021 | $1,500,000.00 | Cathay Bank, Los Angeles, CA |
| 10/19/2021 | $364,755.00 | BBVA Bancomer, SA Payment |

51.     These outgoing payments flowed to accounts at six banks registered to three separate beneficial owners.

52.     Ross's IOTA account received a single incoming transfer of $29 million—a sum that, on information and belief, is significantly larger than the sums that account usually receives.

53.     Ross has stated under oath that he authorized all of the foregoing transactions out of his IOTA account without first verifying the source of those funds.

54.     Ross has stated under oath that he believed that the $29 million was being transferred to his IOTA from the account of his client's business partner. If Ross had consulted the records of his IOTA account before authorizing the outgoing transactions, he would have seen that the $29 million came from Tidal Basin.

55.     On information and belief, it was inconsistent with Ross's account history and law practice to receive a large transfer of funds into his IOTA account and then quickly transfer the funds in chunks to various banks, including foreign banks.

56.     On information and belief, Ross did not undertake reasonable diligence to determine whether the recipients were authorized or appropriate recipients of the funds, nor did he undertake reasonable diligence to determine whether and why the money supposedly owed to his client should be sent to six separate accounts, registered to three separate beneficial owners, in two countries.

*__Regions Bank continues to disseminate funds and fails to take preventive measures even after Scotiabank rejects one of the transfers.__*

57.     On October 15, 2021, Scotiabank rejected Regions Bank's attempt to transfer $8 million to one of its accounts.

58.     Scotiabank notified Regions Bank that it was rejecting the transfer due to "internal policy," and on information and belief, Regions Bank failed to inquire with Scotiabank as to why the funds were rejected.

59.     Instead, just three days later, on October 18, 2021, Regions Bank executed a request by Ross to break the $8 million transfer into two $4 million transfers to two Mexican banks.

*__The fraud is discovered, and the United States Secret Service launches an investigation.__*

60.     From approximately October 5 to October 26, 2021, the Hackers engaged in a scheme to avoid detection of their fraud.

61.     The Hackers used their control of the Rising Phoenix VP's email account and the spoofed Rising Phoenix and MCI email accounts to prevent Rising Phoenix executives from seeing correspondence from MCI's CEO concerning the status of the (diverted) payment, which would have alerted Rising Phoenix and Tidal Basin to the fraud. The Hackers also successfully deceived MCI by impersonating Rising Phoenix executives and assuring MCI that the payment from Rising Phoenix/Tidal Basin was forthcoming, even though the Hackers had already induced Rising Phoenix/Tidal Basin to send the funds to the account controlled by Ross.

62.     Rising Phoenix and Tidal Basin discovered the fraud on October 26, 2021, when MCI's CEO placed a telephone call to Rising Phoenix to inquire about the missing payment.

63.     Rising Phoenix and Tidal Basin then reported the hacking and the fraud to law enforcement. The United States Secret Service launched an investigation into the fraud. In connection with the investigation, on November 16, 2021 and on January 6, 2022, the United States seized funds totaling $4,183,402.74 and $722,327.52, respectively, from Ross's IOTA account and Regions Bank's General Ledger pursuant to seizure orders issued by the United States District Court for the Northern District of New York, the judicial district in which Rising Phoenix and Tidal Basin are headquartered.

64.     On January 12, 2022, Rising Phoenix paid MCI the full amount Rising Phoenix/Tidal Basin owed MCI for subcontracting services.

65.     Ross subsequently filed a claim in the Northern District of New York action referenced above asserting, among other things, that roughly $1.2 million of the funds seized by the government came from the sale of his own property.

66.     The Rules Regulating the Florida Bar prohibit commingling of a lawyer's personal funds with money held in trust in an IOTA account. *See* R. Regulating Fla. Bar 5-1.1(a)(1).

67.     Regardless of the origin of the $1.2 million Ross claims as proceeds from a personal real estate sale and whether they were appropriately held in the IOTA account, those funds were commingled with Rising Phoenix/Tidal Basin funds in an account that was used to defraud Rising Phoenix and Tidal Basin.

68.     To date, the government has seized $4,905,730.26, including the $1,213,113.11 claimed by Ross.

69.     Rising Phoenix and Tidal Basin have recovered nothing to date, although they have filed a claim in the above-referenced action filed in the Northern District of New York.

## COUNT I: BREACH OF FIDUCIARY DUTY

70.     Plaintiffs incorporate by reference paragraphs 1 through 69.

71.     Defendant Ross owed a fiduciary duty to Rising Phoenix and Tidal Basin as soon as their funds were transferred into his IOTA account. *See* R. Regulating Fla. Bar 5-1.1, cmt.

72.     Ross breached that fiduciary duty by various acts, including:

   i.    Failing to promptly notify Rising Phoenix or Tidal Basin that their funds had been transferred into his IOTA account;

   ii.   Failing to safeguard Rising Phoenix and Tidal Basin's funds;

   iii.  Failing to make a diligent search and inquiry to determine the beneficial owner of the funds, if he was unaware that Rising Phoenix or Tidal Basin was the beneficial owner of the funds; and/or

   iv.   Failing to dispose of the funds in a lawful manner and instead disbursing the funds to third parties in contravention of the Rules Regulating the Florida Bar and without lawful justification.

73.     Ross's breach of his fiduciary duty to Rising Phoenix and Tidal Basin was an actual and proximate cause of Rising Phoenix and Tidal Basin's monetary injury. But for Ross's breach

of his duty, Rising Phoenix and Tidal Basin's funds would not have been disbursed to various entities that were not lawfully entitled to receive the funds, and as alleged herein, Ross's conduct was at least a substantial factor in bringing about Rising Phoenix and Tidal Basin's injury.

## COUNT II: NEGLIGENCE

74.     Plaintiffs incorporate by reference paragraphs 1 through 69.

75.     Ross also owed a duty of reasonable care to Rising Phoenix and Tidal Basin arising from judicial precedent and the general facts of the case, including the facts that Ross:

     i.      Was a licensed attorney controlling an IOTA account regulated by the Rule 5-1.1 of the Rules Regulating the Florida Bar;

     ii.     Accepted Rising Phoenix/Tidal Basin's funds into his IOTA account;

     iii.    Actually or impliedly misrepresented that he knew the funds' origin and that they lawfully arrived in his IOTA account; and

     iv.     Initiated numerous wire transfers to disperse the fraudulently obtained funds to bank accounts primarily outside of the United States without consulting with Rising Phoenix or Tidal Basin.

76.     Ross breached that duty by various acts, including:

     i.      Operating his IOTA account in a manner that violated the Rules Regulating the Florida Bar, including by failing to promptly notify Rising Phoenix or Tidal Basin that their funds had arrived in his IOTA account and/or failing to make a reasonable and diligent search and inquiry to determine the beneficial owner of the funds;

     ii.     Directing Regions Bank to transfer Rising Phoenix/Tidal Basin's funds to various banks, including mostly banks outside of the United States, without taking reasonable care to ensure that those entities were lawfully entitled to the

funds, or with knowledge or in reckless disregard of the fact that those entities were not lawfully entitled to the funds;

iii.   Representing that he knew the origin of the funds, that the funds arrived in his account by lawful means, and that the funds were related to his legal practice; and

iv.   Responding to Scotiabank's rejection of an $8 million transfer by breaking the funds into two separate $4 million transfers to two other Mexican banks, rather than undertaking any belated due diligence.

77.   Ross's breaches caused Rising Phoenix and Tidal Basin's injury.

### COUNT III: GROSS NEGLIGENCE

78.   Plaintiffs incorporate by reference paragraphs 1 through 69.

79.   Ross was so reckless or wanting in care that his conduct constituted a conscious disregard or indifference to the rights of Rising Phoenix and Tidal Basin, and Ross undertook a course of conduct that a reasonable and prudent person would know would probably and most likely result in injury to property.

80.   Ross breached that standard of care by taking actions, including those described in paragraphs 42 through 56, which exhibited a conscious disregard or indifference to the property right of Rising Phoenix and Tidal Basin.

81.   Under the circumstances alleged herein, a reasonable and prudent person would know that these actions would probably and most likely result in injury to property. Plaintiffs subsequently suffered injury to property and now seek damages to recover the lost funds.

### COUNT IV: FRAUD

82.   Plaintiffs incorporate by reference paragraphs 1 through 69.

14

83.     As alleged herein, the Hackers executed a fraudulent scheme to deprive Rising Phoenix and Tidal Basin of their funds.

84.     On information and belief, Ross knew of the fraudulent scheme, as evidenced by his conduct, including the fact that Ross requested that Regions Bank disburse the funds to various banks in Mexico shortly after the funds unlawfully arrived in his IOTA account.

85.     Ross actively participated in and/or orchestrated the fraudulent scheme. Ross allowed Rising Phoenix/Tidal Basin's fraudulently obtained funds to be deposited into his IOTA account. He then failed to disclose to Rising Phoenix and Tidal Basin the material fact that their funds were in his IOTA account or that he was disbursing their funds to other entities in breach of his fiduciary duty to Rising Phoenix and Tidal Basin. In so doing, and as alleged and described herein, Ross made misrepresentations and/or omissions to Rising Phoenix and Tidal Basin.

86.     Ross knew the misrepresentations and/or omissions he made to Rising Phoenix and Tidal Basin were false when he made them, or he made the misrepresentations and/or omissions in reckless disregard of their falsity.

87.     Ross intended for Rising Phoenix and Tidal Basin to rely on and act on his misrepresentations and/or omissions.

88.     Rising Phoenix and Tidal Basin did believe in the truth of Ross's misrepresentations and/or omissions.

89.     Ross's misrepresentations and/or omissions were an actual and proximate cause of Rising Phoenix and Tidal Basin's injury. Due to their detrimental reliance upon Ross's misrepresentations and/or omissions, Rising Phoenix and Tidal Basin subsequently suffered injury to property and now seek damages to recover the lost funds.

## COUNT V: CONSTRUCTIVE FRAUD

90.     Plaintiffs incorporate by reference paragraphs 1 through 69.

15

91.     Even if Ross had no actual intent to defraud, Ross still owed a fiduciary duty to Rising Phoenix and Tidal Basin, violated that duty by making misrepresentations and/or omissions, and intended for Rising Phoenix and Tidal Basin to rely on his misrepresentations and/or omissions.

92.     Rising Phoenix and Tidal Basin subsequently relied on Ross's misrepresentations and/or omissions and suffered injury to property as an actual and proximate result of Ross's actions or inaction.

## COUNT VI: FRAUDULENT CONCEALMENT

93.     Plaintiffs incorporate by reference paragraphs 1 through 69.

94.     As alleged and described above, Ross owed a fiduciary duty to Rising Phoenix and Tidal Basin, which charged Ross with various obligations described above, including promptly notifying Rising Phoenix and Tidal Basin that their funds were in his IOTA account and safeguarding the funds.

95.     Ross abused that fiduciary relationship or took unconscionable advantage of Rising Phoenix and Tidal Basin through numerous acts of concealment, including concealing his awareness of the Hackers' plot, his awareness that the money was not lawfully in his IOTA account, and/or his awareness that his decision to disburse the money to various entities was unlawful and would deprive Rising Phoenix and Tidal Basin of a vast sum of money.

96.     Ross's concealment(s) caused or induced Rising Phoenix and Tidal Basin to not discover the Hackers' scheme and to not take actions that could have prevented the disbursement of their funds and was an actual and proximate cause of their injury.

## COUNT VII: AIDING AND ABETTING FRAUD

97.     Plaintiffs incorporate by reference paragraphs 1 through 69.

98.     As alleged and described herein, there existed a fraud to deprive Rising Phoenix and Tidal Basin of their funds.

99.     Ross had knowledge of the fraud, as demonstrated by, among other things, his failure to verify the source of the funds, his representations that Rising Phoenix/Tidal Basin's funds were transferred into his IOTA account for legitimate business reasons related to his law practice, and his requests to Regions Bank to disburse the funds.

100.    Ross provided substantial assistance to the Hackers to advance the commission of the fraud by, among other things, allowing the funds to be deposited into his IOTA account, failing to notify Rising Phoenix and Tidal Basin that their funds had been deposited into his IOTA account, and initiating the disbursement of the funds.

101.    Ross's substantial assistance to the Hackers as alleged and described herein was a proximate cause of Rising Phoenix and Tidal Basin's injury.

### COUNT VIII: CONVERSION

102.    Plaintiffs incorporate by reference paragraphs 1 through 69.

103.    As alleged and described herein, Ross acquired possession of Rising Phoenix/Tidal Basin's property, and his unauthorized acts, including directing the transfer of the funds to various entities in derogation of his duties under the Rules Regulating the Florida Bar, permanently or for an indefinite period of time deprived Rising Phoenix and Tidal Basin of possession of their property.

104.    Rising Phoenix and Tidal Basin subsequently suffered injury to property and now seek damages to recover the lost funds.

## PRAYER FOR RELIEF

Plaintiffs seek compensatory damages, costs, prejudgment and post-judgment interest, attorneys' fees, and any other relief the Court deems just and appropriate. Plaintiffs reserve the right to seek punitive damages and disgorgement of ill-gotten gains.

## JURY DEMAND

Plaintiffs demand a jury trial on all counts.

Dated: November 17, 2022        Respectfully submitted,

ZUCKERMAN SPAEDER LLP

*/s/ Nathan M. Berman*
Nathan M. Berman (Fla. Bar No. 0329230)
101 East Kennedy Blvd., Suite 1200
Tampa, FL 33602
Tel.: 813-221-1010
nberman@zuckerman.com

Aitan D. Goelman (*pro hac vice* forthcoming)
Casey Trombley-Shapiro Jonas
(*pro hac vice* forthcoming)
Bryan M. Reines (*pro hac vice* forthcoming)
Trillium E. Chang (*pro hac vice* forthcoming)
1800 M Street NW, Suite 1000
Washington, DC 20036
Telephone: 202.778.1800
Facsimile: 202.822.8106
agoelman@zuckerman.com
cjonas@zuckerman.com
breines@zuckerman.com
tchang@zuckerman.com

*Counsel for Plaintiffs*

IN THE CIRCUIT COURT OF THE 17ᵗʰ JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

Case No: _____ 22 - 17080

Rising Phoenix Holding · Corporation
Plaintiff                                    Judge Division: _____ 05

VS

Richard S Ross
Defendant

FILED
NOV 17 2022
By

**CLERK'S CERTIFICATE OF COMPLIANCE**

I hereby certify that pursuant to Administrative Order, No. 2020-73Civ/2020-74-UFC:
"ADMINISTRATIVE ORDER DIRECTING CLERK OF COURTS WITH REGARD TO
DISMISSED CIVIL OR FAMILY CASES",

The Clerk has conducted a search for all previous existing civil cases related to
these two parties.

Listed below are all the aforementioned related cases:

NONE

Brenda D. Forman
Circuit and County Courts

By: _____

Deputy Clerk

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

Rising Phoenix Holding Corporation
*and*
Tidal Basin Government Consulting, LLC,

     *Plaintiffs,*

v.

Richard S. Ross,

     *Defendant*.

Case No.  CACE-22-017080 _____

## SUMMONS

THE STATE OF FLORIDA:

    To Each Sheriff of the State:

    YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint

or Petition in this action on Defendant:

Richard S. Ross
525 NE 14th Avenue
Fort Lauderdale, Florida 33301

    The Defendant is required to serve written defenses to the Complaint on Nathan M. Berman, Esq. Zuckerman Spaeder, LLP, Attorney for Plaintiffs, Rising Phoenix Holding Corporation, and Tidal Basin Government Consulting, LLC whose address is 101 East Kennedy Blvd., Suite 1200, Tampa FL 33602, **within twenty (20) days after service of this Summons on the Defendant**, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Defendant attorneys or immediately thereafter. If the Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint.

    DATED ON        NOV 21 2022

BRENDA D. FORMAN
Clerk of the Court

By_____
As Deputy

BRENDA D. FORMAN

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefónica no lo protegerá. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.**

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egale-ment, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**Si vous êtes une personne handicapée qui a besoin de mesures d'adaptation pour participer à cette procédure, vous avez droit, sans frais pour vous, à une certaine assistance. Veuillez contacter ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 au moins 7 jours avant votre comparution prévue au tribunal, ou immédiatement après avoir reçu cette notification si le délai avant la comparution prévue est inférieur à 7 jours; si vous êtes malentendant ou avez un trouble de la parole, appelez le 711.**

## ENPÒTAN

Pwosedi legal yo te pran kont ou. Ou gen 20 jou konsekitif ki soti nan dat konklizyon sa a pou ou ranpli yon repons alekri pou plent sa a nan tribinal sa a. Yon apel telefon ki senp se pa ase pou pwoteje ou. Ou oblije ranpli repons alekri ou a, ak nimewo a dosye pi wo a ak non pati yo ki te nonmen isit la, si ou vle tribinal la tande ka w la. Si ou pa ranpli repons alekri ou nan rele egzije a, ou riske pedi koz la ak sale ou, lajan ou, ak pwopriyete ou yo ka mete men sou pita, san okenn lot avi nan tribinal la. Gen lot obligasyon legal epi ou ka mande sevis imedya yon avoka. Si ou pa konnen yon avoka, ou ka rele yon sèvis referans avoka oswa yon biwo ed legal (ki nan lis nan anye telefon).

Si ou chwazi pou ou soumet yon repons alekri tet ou, ou pral bezwen tou voye oswa voye yon kopi repons ekri ou nan fòm sa a an menm tan an tankou fomalite sa a "Avoka Pleyan/ Pwokire a" (Pleyan oswa avoka li) non anba a.

**Si ou se yon moun ki enfim ki bezwen akomodasyon pou w kab patisipe nan pwosedi sa a, ou gen dwa, san ou pa bezwen peye okenn lajan, pou w jwenn yon sèten èd. Tanpri kontakte ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 Kòdonatris pwogram Lwa Ameriken pou Moun ki Enfim yo nan [identify court personnel's address and telephone number], fè sa omwen 7 jou anvan dat ou gen randevou pou parèt nan Tribinal la, oswa fè sa imedyatman apre ou fin resevwa konvokasyon an si dat ou gen pou w parèt nan tribinal la mwens pase 7 jou; si ou gen**

3

**pwoblèm pou w tande byen oswa pou w pale klè, rele 711.**

Dated: November 17, 2022

Respectfully submitted,

**ZUCKERMAN SPAEDER LLP**

*/s/ Nathan M. Berman*
Nathan M. Berman (Fla. Bar No. 0329230)
101 East Kennedy Blvd., Suite 1200
Tampa, FL 33602
Tel.: 813-221-1010
nberman@zuckerman.com

Aitan D. Goelman (*pro hac vice* forthcoming)
Casey Trombley-Shapiro Jonas
(*pro hac vice* forthcoming)
Bryan M. Reines (*pro hac vice* forthcoming)
Trillium E. Chang (*pro hac vice* forthcoming)
1800 M Street NW, Suite 1000
Washington, DC 20036
Telephone: 202.778.1800
Facsimile: 202.822.8106
agoelman@zuckerman.com
cjonas@zuckerman.com
breines@zuckerman.com
tchang@zuckerman.com

*Counsel for Plaintiffs Rising Phoenix Holdings
Corp. and Tidal Basin Government Consulting,
LLC*

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE22017080

RISING PHOENIX HOLDING
CORPORATION; TIDAL BASIN
GOVERNMENT CONSULTING
LLC,

        Plaintiffs,

v.

RICHARD S. ROSS,

        Defendant.

_____/

## DEFENDANT'S NOTICE OF FILING NOTICE OF REMOVAL

        COMES NOW, Defendant, RICHARD S. ROSS, who has on November 17, 2022

filed a Notice of Removal of this action in the office of the Clerk of the United States District Court

for the Southern District of Florida. A true and correct copy of said Notice of Removal is attached

hereto. Pursuant to 28 U.S.C. § 1446(d), this Court "shall proceed no further unless and until the case

is remanded."

                Respectfully submitted,

                /Richard S. Ross, Esq./
                RICHARD S. ROSS, ESQ.
                525 N.E. 14 Avenue
                Fort Lauderdale, Florida 33301
                Tel 954/252-9110
                Fax 954/252-9192
                E mail: prodp@ix.netcom.com
                Florida Bar No. 436630
                *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2022, a true and correct copy of the foregoing

has been served by electronic filing through the Florida E-Portal Filing System, which will send

notice to the parties to this litigation as follows:

Nathan M. Berman (Fla. Bar No. 0329230)
101 East Kennedy Blvd.,Suite 1200
Tampa, FL 33602
Tel.: 813-221-1010
nberman@zuckerman.com

Aitan D. Goelman (prohac vice forthcoming)
Casey Trombley-Shapiro Jonas
(pro hac vice forthcoming)
Bryan M. Reines (prohac vice forthcoming)
Trillium E. Chang (prohac vice forthcoming)
1800 M Street NW, Suite 1000
Washington, DC 20036
Telephone:202.778.1800
Facsimile: 202.822.8106
agoelman@zuckerman.com
breines@zuckerman.com
tchang@zuckerman. com

Counsel for Plaintiffs Rising Phoenix Holdings
Corp. and Tidal Basin Government Consulting,
LLC

/s/Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ., *pro se*

Case 0:23-cv-60784-RS Document 1-2 Entered on FLSD Docket 04/27/2023 Page 30 of 67

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

RISING PHOENIX HOLDING
CORPORATION; TIDAL BASIN
GOVERNMENT CONSULTING
LLC,

     Plaintiffs,

v.                            CIVIL ACTION NO.:

RICHARD S. ROSS,

     Defendant.

_____/

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Richard S. Ross, ("Ross"), hereby removes the above-captioned action-with reservation of all rights and defenses-from the Circuit Court of Broward County, Florida, where it is pending as case number CACE-22-017080 (the "Removed Action"), to the United States District Court for the Southern District of Florida. In support of this removal, Ross states as follows:

## INTRODUCTION

This dispute centers around the alleged fraud that was perpetrated on Plaintiffs, Rising Phoenix Holding Corporation ("Rising Phoenix") and Tidal Basin Government Consulting, LLC ("Tidal Basin") by unknown fraudsters. Rising Phoenix has an ownership interest in three of the nation's leading disaster preparedness and recovery firms. Compl. at ¶ 1. One of its subsidiaries, Tidal Basin, entered into a relationship with the State of Florida's Division of Emergency Management to support Florida's COVID-19 vaccination program. Compl. at ¶ 2. In connection with this work, Tidal Basin engaged MCI BPO, LLC ("MCI") to staff a call center. Compl. at ¶ 3.

In October 2021, Tidal Basin owed $29 million to MCI for services it provided. Compl. at ¶ 3. Fraudsters gained access to the email account of Rising Phoenix's Vice President and Project Finance Chief. The fraudsters sent a spoof email (posing as a MCI's CEO) informing Rising Phoenix that the payment owed to MCI should be sent to an account held at Regions Bank. The specified account number was actually associated with Ross' IOTA Trust Account ("Trust Account"), Compl. at ¶ 33, and Tidal Basin sent the money to the Trust Account. Compl. at ¶ 7-9. Funds were later wired out from Regions Bank to various banks, Compl. At ¶ 10, due to instructions Ross received from one of his clients who Ross believed was associated with a legitimate business transaction and was due the money. Compl. at ¶ 42. Because of the amount in controversy and the diversity of citizenship between the parties, and further because Ross has not been served with the state court complaint, this Court has subject matter jurisdiction over the instant case pursuant to 28 U.S.C. § 1332, and removal to this Court is proper.

## STATEMENT OF REMOVAL

1. On November 17, 2022, Plaintiff filed a Complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, docketed as CACE-22-017080 (the "State Court Action").

2. As of the date of filing, no affidavit of service as to Ross appears on the state-court docket, and Ross has not been served.

3. The forum-defendant rule only applies if a forum defendant has been properly joined and served. 28 U.S.C. § 1441(b)(2).

4. This Notice of Removal is filed within thirty days of service of the complaint.

5. Removal of this action is, therefore, timely under 28 U.S.C. § 1446(b) and Federal Rule of

Civil Procedure 6(a).

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is "complete diversity between all plaintiffs and all defendants" and "the amount in controversy exceeds $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *See* 28 USC § 1441(b)(2).

7.    Removal to the Fort Lauderdale Division of the United States District Court for the Southern District of Florida is proper under 28 U.S.C. § 1441(a) because Broward County, where this action is currently pending, is within the Fort Lauderdale Division of the Southern District of Florida. 28 U.S.C. § 89(c).

8.    Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders otherwise part of the court file are attached hereto as Exhibits A and B.

9.    Ross has not filed a responsive pleading in the State Court Action.

10.   Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiffs, and a written notice of the filing of this Notice of Removal is being filed with the Clerk of Court for the Circuit Court of Broward County, Florida.

11.   By filing and/or consenting to, as applicable, this Notice of Removal, the Ross does not waive any claim, argument, or defense that might be available to him, including objections to jurisdiction or venue, nor do they concede that Plaintiffs have pleaded any claim upon which relief may be granted.

12.   In the event that any questions should arise with regard to the propriety of the removal of this Action, Ross respectfully requests the opportunity to present a brief and oral argument in support of their positions expressed herein.

## DIVERSITY JURISDICTION

Under 28 U.S.C. § 1441, a defendant may remove a civil action originally filed in state court to the federal district court for the district in which the civil action was filed whenever the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action in pending."). *See also Loss Mountain Homeowners Ass'n, Inc. v. Rice*, 248 F. App'x 114, 115-16 (11th Cir. 2007) ("Original jurisdiction requires diversity of the parties or the existence of a federal question.").

A. Complete Diversity Exists Among the Parties.

Complete diversity exists among the parties because Ross is a citizen of Florida, Plaintiff Rising Phoenix is a New York corporation with its principal place of business in New York. Compl. at ¶ 15, and Plaintiff Tidal Basin is a District of Columbia limited liability company with its principal place of business located in New York.

B. The Amount in Controversy Exceeds $75,000 .

The $75,000 amount-in-controversy requirement is also met. 28 U.S.C. § 1332(a). This dispute concerns an ACH transaction totaling $29,583,354.63 which was allegedly credited to a Ross' Trust Account held at Regions Bank. Compl. at ¶ 35. Plaintiffs allege only $4,905,730.26 has been seized by law enforcement. Compl. at ¶ 63. Of that amount, Ross has claimed $1,123,331.11 owing to his legal representation regarding the sale of his personal residence and other client funds unrelated to Plaintiffs that were commingled in the Trust Account. *See* Compl. at ¶ 65, 68. All of the counts in the complaint attempt to assert theories under which Plaintiffs could recover

4

over $20,000,000. Accordingly, the amount in controversy exceeds $75,000.00. Based on the allegations in the Complaint as set forth above, this Court has original jurisdiction over this action under 28 U.S.C. §§ 1332. Accordingly, removal of this action is proper under 28 U.S.C. § 1441.

**CONCLUSION**

For the foregoing reasons, Ross respectfully gives notice that this action has been removed from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County to the United States District Court for the Southern District of Florida, Fort Lauderdale Division, being the district and division for the county in which this action is pending, and requests that this action proceed as properly removed to this Court.

Respectfully submitted,

/Richard S. Ross, Esq./
RICHARD S. ROSS, ESQ.
525 N.E. 14 Avenue
Fort Lauderdale, Florida 33301
Tel 954/252-9110
Fax 954/252-9192
E mail: prodp@ix.netcom.com
Florida Bar No. 436630
*Pro Se*

5

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2022, a true and correct copy of the foregoing

has been served by electronic filing through the CM/ECF system, which will send notice to the

parties to this litigation as follows:

Nathan M. Berman (Fla.Bar No. 0329230)
101 East Kennedy Blvd.,Suite 1200
Tampa, FL 33602
Tel.: 813-221-1010
nberman@zuckerman.com

Aitan D. Goelman (prohac vice forthcoming)
Casey Trombley-Shapiro Jonas
(pro hac vice forthcoming)
Bryan M. Reines (prohac vice forthcoming)
Trillium E. Chang (prohac vice forthcoming)
1800 M Street NW, Suite 1000
Washington, DC 20036
Telephone:202.778.1800
Facsimile: 202.822.8106
agoelman@zuckerman.com
breines@zuckerman.com
tchang@zuckerman. com

Counsel for Plaintiffs Rising Phoenix Holdings
Corp. and Tidal Basin Government Consulting,
LLC

/s/Richard S. Ross, Esq.
RICHARD S. ROSS, ESQ., *pro se*

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

Rising Phoenix Holding Corporation *and*
Tidal Basin Government Consulting, LLC,

     *Plaintiffs,*

*v.*

                                Case No. CACE-22-017080

Richard S. Ross,

     *Defendant.*

## NOTICE OF FILING OF ORDER OF REMAND

Plaintiffs Rising Phoenix Holdings Corporation and Tidal Basin Government Consulting,

LLC, by and through undersigned counsel, hereby give notice of filing of the U.S. District Court's

Order remanding this case to the Seventeenth Judicial Circuit, attached as Exhibit "A."

Dated: April 21, 2023

                        Respectfully submitted,

                        **ZUCKERMAN SPAEDER LLP**

                        */s/ Nathan M. Berman*
                        Nathan M. Berman (Fla. Bar No. 0329230)
                        101 East Kennedy Blvd., Suite 1200
                        Tampa, FL 33602
                        Tel.: 813-221-1010
                        nberman@zuckerman.com

                        Aitan D. Goelman (*pro hac vice* forthcoming)
                        Casey Trombley-Shapiro Jonas
                        (*pro hac vice* forthcoming)
                        Bryan M. Reines (*pro hac vice* forthcoming)
                        Trillium E. Chang (*pro hac vice* forthcoming)
                        1800 M Street NW, Suite 1000
                        Washington, DC 20036
                        Telephone: 202.778.1800
                        Facsimile: 202.822.8106
                        agoelman@zuckerman.com

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

cjonas@zuckerman.com
breines@zuckerman.com
tchang@zuckerman.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 21, 2023, a true and correct copy of the foregoing has

been filed via the Florida E-Filing portal system which will provide copies to all parties of record.

/s/ Nathan M. Berman
Nathan M. Berman

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Angela E. Noble**
Court Administrator • Clerk of Court

400 North Miami Avenue, Room 8N09
Miami, Florida 33128-7716
(305)523-5100

Date: April 21, 2023

**Clerk of Circuit and County Courts**
17th Judicial Circuit of Florida
230 Broward County Courthouse
201 South East 6th Street RM 4130
Ft. Lauderdale, FL 33301

RE: District Court Case No.: 0:22-cv-62147-KMW

State Court Case No.: CACE-22-017080

Dear Sir/Madam:

Pursuant to 28 U.S.C. §1447, a certified copy of the District Court's Order of Remand must be mailed to

to the Clerk of the State Court.

Please acknowledge receipt of the Order in the above referenced case by signing and returning the enclosed

copy of this letter.

Angela E. Noble, Clerk of Court

By _/s/ Mary-Yves Etienne_
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Angela E. Noble**
Court Administrator • Clerk of Court

400 North Miami Avenue, Room 8N09
Miami, Florida 33128−7716
(305)523−5100

Date: April 21, 2023

**Clerk of Circuit and County Courts**
17th Judicial Circuit of Florida
230 Broward County Courthouse
201 South East 6th Street
Ft. Lauderdale, FL 33301

RE: District Court Case No.: <u>0:22−cv−62147−KMW</u>

   State Court Case No.: <u>CACE−22−017080</u>

Dear Sir/Madam:

Pursuant to 28 U.S.C. §1447, a certified copy of the District Court's Order of Remand must be mailed

to the Clerk of the State Court.

Please acknowledge receipt of the Order in the above referenced case by signing and returning the enclosed

copy of this letter.

**Clerk's Acknowledgment of Receipt**
The undersigned hereby acknowledges receipt of the

District Court's certified copy of the Order of Remand.

By:_____
    Deputy Clerk

On:_____

Angela E. Noble, Clerk of Court

By  _/s/ *Mary−Yves Etienne*___
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 22-62147-CV-WILLIAMS**

RISING PHOENIX HOLDING
CORPORATION, *et al.*,

      Plaintiffs,

v.

RICHARD S. ROSS,

      Defendant.

_____/

## ORDER

**THIS MATTER** is before the Court on U.S. Magistrate Judge Panayotta Augustin-Birch's Report and Recommendation (DE 18) ("***Report***") on Plaintiff Rising Phoenix Holding Corporation's and Plaintiff Tidal Basin Government Consulting, LLC's (together, "***Plaintiffs***") Motion to Remand (DE 6) ("***Motion***"). In the Report, Judge Augustin-Birch recommends that the Court grant in part and deny in part Plaintiffs' Motion. (DE 18.) More specifically, Judge Augustin-Birch recommends that the Court remand this case but deny Plaintiffs' request for attorneys' fees. (*Id.*) Defendant Richard S. Ross ("***Defendant***" or "***Ross***") filed Objections to the Report (DE 19) ("***Objections***"), to which Plaintiffs filed a Response (DE 20).

### I.    BACKGROUND

In the Objections, Defendant argues that Judge Augustin-Birch did not engage in the requisite statutory construction of 28 U.S.C. § 1441 and "impermissibly rewrote" the statute by looking beyond its plain meaning; misconstrued Eleventh Circuit case law and erred in finding that Defendant's gamesmanship warranted remand; failed to address

Page **1** of **8**

Defendant's assertion that Plaintiffs fraudulently joined Defendant to trigger the forum-defendant rule; and misinterpreted non-binding Second Circuit case law. (DE 19 at 2–3.) Having conducted a *de novo* review of Plaintiffs' Motion to Remand, the Court concurs with the findings and conclusions in the Report.

## II. DISCUSSION

As explained in the Report, a civil action otherwise removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). This is known as the forum-defendant rule. The rule unambiguously disallows removal if any defendants "properly joined and served" are forum defendants. A "loophole" to the forum-defendant rule which has been the subject of discussion in many federal courts is a "snap removal," where a defendant removes a case prior to a forum defendant being served. The Eleventh Circuit has not yet decided whether remand is appropriate when a case is removed prior to service on a forum defendant but it did provide guidance in *Goodwin v. Reynolds*, 757 F.3d 1216 (11th Cir. 2014).

In *Goodwin*, the plaintiff filed her case in state court against one forum defendant and two non-forum defendants, and the two non-forum defendants removed the case prior to the forum defendant being served. *Id.* at 1218. Plaintiff filed a motion to remand or alternatively to dismiss the case, and the district court granted plaintiff's motion to dismiss under Federal Rule of Civil Procedure 41(a)(2). *Id.* at 1218–19. The Eleventh Circuit held that the district court did not abuse its discretion in dismissing the case without prejudice even where plaintiff's stated intention was to subsequently file suit against only the forum defendant, serve him with process, and then join the other two non-forum

Page **2** of **8**

defendants to "irrefutably trigger the forum-defendant rule and, thereby, preclude a second removal." *Id.* at 1219.

Further, the *Goodwin* Court opined on the forum-defendant rule, noting that "the purpose of [section 1441(b)'s "properly joined and served"] language is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom the plaintiff does not intend to proceed, and whom the plaintiff does not even serve." *Id.* at 1221 (internal quotations and citation omitted). In light of that interpretation and the fact that the defendants only achieved removal through "gamesmanship,"[1] the Court stated it "cannot believe" that section 1441(b)'s "properly joined and served" language "constrains the district court's discretion under Rule 41(a)(2) to undo [d]efendants' gamesmanship in the circumstances at bar." *Id.*

The question in this case is whether section 1441(b)(2) permits a sole forum defendant to remove a case before that defendant has been served. *Goodwin* and the courts within this circuit interpreting it lead the Court to conclude that there is no exception to the forum-defendant rule that would allow a sole forum defendant to remove a case prior to service. *See, e.g.*, *D'Ovidio v. Royal Caribbean Cruises, Ltd.*, 2022 WL 16798446, at \*4 (S.D. Fla. Nov. 8, 2022) ("Defendant Royal Caribbean is the *only* defendant in this case and it is an in-state forum defendant, which means that under this interpretation, the statutory exception to the forum defendant rule would not apply in this case to allow removal. There are no other defendants, let alone any other served defendants that would

---

[1] The Eleventh Circuit referred to defendants' snap removal as gamesmanship because they only achieved removal in a case with a forum defendant by "exploiting, first, [p]laintiff's courtesy in sending them copies of the complaint and, second, the state court's delay in processing [p]laintiff's diligent request for service." *Id.*

trigger the exception to the forum defendant rule to allow a proper removal."); *Butler v. Stage 29 Media Prods., Inc.*, 2020 WL 13349033, at \*3 (S.D. Fla. July 10, 2020) ("The Court agrees with others before it, including in this District, that allowing this sort of snap removal flies in the face of the purpose of the forum defendant rule."); *see also First Sw. Fin. Servs., LLC v. Dawkins Home, Inc.*, 2019 WL 7945684, at \*4 (S.D. Fla. July 3, 2019) (opining on snap removals and stating: "Courts appear to generally disfavor this 'controversial' litigation tactic").

Defendant disagrees and argues that the plain language of section 1441(b)(2) permits removal where the forum defendant has not yet been served, even if the forum defendant is the *only* defendant. (DE 11; DE 19.) However, Defendant's interpretation chips away at the forum-defendant rule and is at odds with both the purpose of the "properly joined and served" language in section 1441(b) and the general public policy behind the removal statute. *See Delaughder v. Colonial Pipeline Co.*, 360 F. Supp. 3d 1372, 1381 (N.D. Ga. 2018) (remanding case that was removed prior to the forum defendant being served and stating, "this decision is meant to close an absurd loophole in the forum-defendant rule and to uphold the purpose and integrity of the rule"); *see also Allen v. GlaxoSmithKline, PLC*, 2008 WL 2247067, at \*5 (E.D. Pa. May 30, 2008) ("There is no sound reason to conclude that the purpose of the 'joined and served' requirement is to allow unserved, in-state defendants to remove the action.").

As stated above, the Eleventh Circuit opined that the "properly joined and served" language in section 1441(b)(2) seeks to prevent gamesmanship by a plaintiff. *Goodwin*, 757 F.3d at 1221 ("[T]he purpose of the language is 'to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom [the plaintiff] does not

intend to proceed, and whom [the plaintiff] does not even serve . . . . We find this interpretation persuasive."). The Court rejects Defendant's interpretation of the statute because rather than furthering the purpose of preventing a *plaintiff's* gamesmanship, Defendant's reading would condone and promote a *defendant's* gamesmanship. In essence, as understood by Defendant, the forum-defendant rule would reward a forum defendant who receives pre-filing notice of a lawsuit or who monitors state court dockets to gain post-filing, pre-service notice. However, the statute is not intended to create an exception that would allow savvy forum defendants to be able evade the forum-defendant rule. Allowing such an exception would "turn the removal statute on its head." *D'Ovidio*, 2022 WL 16798446, at *4. Moreover, to allow a sole forum defendant to remove a case prior to service via a snap-removal would "condition a forum defendant's ability to remove a diversity case on the timing of service." *Id.* (quoting *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1370 (N.D. Ga. 2011)) ("There is no conceivable reason why Congress would condition a forum defendant's ability to remove a diversity case on the timing of service.").

In addition to comporting with the public policy behind section 1441(b)'s "properly joined and served" language, this conclusion is consonant with the public policy rationale behind remand, generally: "Congress devised the removal statute and diversity jurisdiction to protect out-of-state defendants from homegrown state juries." *Id.* (concluding that remand "is consistent with the removal statute's purpose and the fundamental tenets of diversity jurisdiction"); *see Timbercreek Asset Mgmt., Inc. v. De Guardiola*, 2019 WL 947279, at *2 (S.D. Fla. Feb. 27, 2019) ("[S]nap removals uniquely undermine the purpose of the forum-defendant rule and contravene the removal legal

standard.") (quoting *Delaughder*, 360 F. Supp. 3d at 1380). Because Defendant—the sole defendant in this action—is an in-state defendant, maintaining this action in federal court does not protect Defendant or his rights.[2]

In his Objections, Defendant seeks to make two main distinctions between the facts in this case and *Goodwin*. First, Defendant contends that he did not engage in gamesmanship like the defendants in *Goodwin*, but rather that he had "post-filing pre-service notice" and "availed himself to the express language contained in the statute," (DE 19 at 14); his gamesmanship can be distinguished from the *Goodwin* defendants' by its temporal posture (*i.e.*, post-filing notice rather than pre-filing notice). However, Defendant's argument misses the mark. While a defendant's gamesmanship may guide a court's analysis on a motion to remand, the question here is whether, gamesmanship aside, permitting a snap removal by a sole in-state defendant would turn the forum-defendant rule on its head.

Second, unlike in *Goodwin* where the Eleventh Circuit stated that "there is no indication that [p]laintiff fraudulently joined the forum defendant," 757 F.3d at 1222, Defendant contends that "joinder of Ross [wa]s fraudulent" for the "sole purpose" of suing Regions Bank (a non-forum defendant) in state court. (DE 19 at 15.) However, there is no indication that Plaintiffs fraudulently joined Defendant or that Plaintiffs do not intend to proceed against Defendant. Defendant was a party to Plaintiffs' first action and is the only Defendant in this second action. While Plaintiffs admittedly intend to add additional

---

[2] Further, the Court cannot maintain an action that was improperly removed because Plaintiffs *may* join non-forum defendants later. Even so, Plaintiffs' current "strategy" is what the plaintiff contemplated, and the Eleventh Circuit approved in *Goodwin*.

defendants to this action after Defendant is served, that does not make joinder of Defendant fraudulent. Rather, it demonstrates Plaintiffs' preference in keeping their action in state court. Such preference does not violate section 1441(b)'s "properly joined and served" language. Indeed, as noted by Plaintiffs: "By voluntarily dismissing their initial lawsuit against Ross and Regions Bank . . . and refiling it only against Ross, Plaintiffs did not act in 'bad faith' as Ross unfairly charges . . . but instead followed a roadmap the Eleventh Circuit explicitly articulated and condoned" in *Goodwin*. (DE 15 at 7–8; DE 20 at 5–6.)

In conclusion, where there is only one defendant who is from the forum state, that defendant's pre-service removal does not make the removal—otherwise impermissible under the forum-defendant rule—proper. *See D'Ovidio*, 2022 WL 16798446, at *4; *see also Goodwin*, 757 F.3d at 1222. In light of the above, and recognizing that "removal statutes should be construed narrowly, with doubts resolved against removal," the Court finds that remand is proper. *See Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003); *see also Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) ("The removal statute should be construed narrowly with doubt construed against removal.").

**III.    CONCLUSION**

Having carefully reviewed the Report, the Objections, the record, and applicable law, it is **ORDERED AND ADJUDGED** as follows:

1. The Report (DE 18) is **AFFIRMED AND ADOPTED**.
2. Plaintiffs' Motion to Remand (DE 6) is **GRANTED**.

3. The Clerk of Court is directed to **REMAND** this case to the Seventeenth Judicial Circuit in and for Broward County, Florida. All other pending motions are **DENIED AS MOOT**. The Clerk is directed to **CLOSE** this case

**DONE AND ORDERED** in Chambers in Miami, Florida, this 20th day of April, 2023.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

Rising Phoenix Holdings Corporation,
Tidal Basin Government Consulting, LLC,
*and*
NBT Bank, N.A.,

      *Plaintiffs*,

v.

      Case No. CACE 22-017080

      JURY TRIAL DEMANDED

Regions Bank,
Regions Financial Corporation,
*and*
Richard S. Ross,

      *Defendants.*

## AMENDED COMPLAINT

Plaintiffs Rising Phoenix Holdings Corporation ("Rising Phoenix"), Tidal Basin Government Consulting, LLC ("Tidal Basin"), and NBT Bank, N.A. ("NBT"), by and through their attorneys, sue Defendants Regions Bank, Regions Financial Corporation ("Regions Financial"), and Richard S. Ross ("Ross") for violations of the Uniform Commercial Code and Florida common law and allege as follows:

## NATURE OF THE CASE

1.    Rising Phoenix Holdings Corporation owns three of the nation's leading disaster preparedness and recovery firms. It is led and managed by a diverse team of multidisciplined professionals with years of experience at the federal, state, and local emergency management levels. Rising Phoenix leverages its expertise to help communities prepare for and recover from emergencies, including natural disasters and terrorist attacks.

2.     In 2021, one of Rising Phoenix's subsidiaries, Tidal Basin, engaged in efforts to fight COVID-19 by entering into a relationship with the State of Florida's Division of Emergency Management to support Florida's COVID-19 vaccination program.

3.     As part of that work, Tidal Basin engaged MCI BPO, LC ("MCI"), a company specializing in customer contact centers and call agent staffing, as a subcontractor.

4.     On or around October 4, 2021, a payment of roughly $29.5 million from Tidal Basin to MCI for subcontracting services performed by MCI was due.

5.     Tidal Basin intended and attempted to send full payment to MCI by means of an electronic funds transfer. Tidal Basin sent this money to an account it believed belonged to MCI.

6.     Instead, Tidal Basin and its computer systems were the victim of a sophisticated business email compromise fraud.

7.     On or about August 6, 2021, yet unidentified individuals (the "Hackers") had gained unauthorized access to the email account of a Rising Phoenix/Tidal Basin executive responsible for key aspects of the MCI contract.

8.     From approximately October 4 to October 26, 2021, the Hackers executed a fraud on Rising Phoenix and Tidal Basin. By impersonating executives from MCI, the Hackers fraudulently induced Tidal Basin to transfer the approximately $29.5 million intended for MCI from Tidal Basin's bank account at NBT to an account at Defendant Regions Bank's branch in Fort Lauderdale, Florida.

9.     The Florida account that received the fraudulently transferred funds was controlled by Defendant Ross, a Florida attorney.

10.     From Ross's account, the funds were transferred to numerous other bank accounts in the United States and Mexico, without Plaintiffs' authorization or knowledge, defrauding Plaintiffs Rising Phoenix and Tidal Basin of their funds.

11.     The Regions Bank account controlled by Ross is an Interest on Trust Account ("IOTA"), a unique type of bank account that can be operated only by attorneys to hold clients' and third parties' funds in trust. When a client's or third party's funds are deposited into such an account, a fiduciary duty is created, owed by the attorney account holder to that client or third party.

12.     The vast majority of the funds stolen from Rising Phoenix and Tidal Basin have not been located or recovered, and the United States and Mexican governments have thus far been unable to identify the Hackers and bring them to justice.

13.     Defendants knew or should have known of the Hackers' fraud and, through malfeasance and/or negligence, directly or indirectly participated in and assisted the fraud.

14.     Plaintiffs seek an award of monetary damages against Defendants and any additional relief the Court deems just and appropriate.

## THE PARTIES

15.     Plaintiff Rising Phoenix Holdings Corporation is a New York holding company with a controlling ownership interest in Tidal Basin Government Consulting, LLC, Tidal Basin Caribe, LLC, and Adjusters International, Ltd. Rising Phoenix is operated from its headquarters located at 126 Business Park Drive, Utica, New York 13502. Its principal place of business is in New York. Rising Phoenix is registered to do business in Florida.

16.     Plaintiff Tidal Basin Government Consulting, LLC is a District of Columbia limited liability company that is a subsidiary of Rising Phoenix. It is operated from its headquarters located

at 126 Business Park Drive, Utica, New York 13502. Its principal place of business is in New York. Tidal Basin is registered to do business in Florida.

17.     Plaintiff NBT Bank, N.A. is a wholly owned subsidiary of NBT Bancorp Incorporated, a publicly traded corporation, with its principal place of business located in Norwich, New York. NBT Bank, N.A.'s headquarters are located at 52 South Broad Street, Norwich, New York 13815. It has branches in New York, Pennsylvania, Vermont, Massachusetts, New Hampshire, Connecticut, and Maine.

18.     Defendant Regions Bank (or Regions Bank of Alabama) is an Alabama state-chartered commercial bank and wholly owned subsidiary of Regions Financial. It is operated from its headquarters located at 50 North Front Street, Memphis, Tennessee 38103, and has branches throughout Florida, including branches located at 100 Southeast 3rd Avenue, Fort Lauderdale, Florida 33394, and 2660 East Commercial Boulevard, Fort Lauderdale, Florida 33308. Regions Bank is registered to do business in Florida.

19.     Defendant Regions Financial Corporation is a Delaware bank holding company that wholly owns Regions Bank. It is operated from its headquarters located at 1900 Fifth Avenue North, Birmingham, Alabama 35203.

20.     Defendant Richard S. Ross is a natural person domiciled and residing at 525 NE 14th Avenue, Fort Lauderdale, Florida 33301. Ross is an attorney licensed to practice in the State of Florida since October 20, 1984 (Fla. Bar No. 436630). Ross has also been a registered practitioner with the United States Patent and Trademark Office since December 14, 1984 (Registration No. 31,658). On information and belief, Ross practices law from an office located at 4801 South University Drive, #237, Fort Lauderdale, Florida 33328.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction under Fla. Stat. §§ 26.012(2)(a), 34.01(1)(c) (2022), because this is an action for damages in excess of $30,000, exclusive of interest, attorneys' fees, and costs.

22.     This Court has personal jurisdiction over Regions Bank because it conducts substantial business in the State of Florida, has committed tortious acts in the State of Florida, owns and/or leases real property in the State of Florida, and has injured Plaintiffs by its conduct in Florida. Regions Bank has hundreds of branches throughout Florida, including in Broward County, and substantially advertises in the state. The Regions Bank account at the heart of this action is located in Florida. This Court has jurisdiction over Regions Financial Corporation because it conducts substantial banking operations in Florida, including at hundreds of Regions Bank branches in Florida. As the parent company of Regions Bank, Regions Financial Corporation also sets the policy and approves the operations of its wholly owned subsidiary, Regions Bank.

23.     This Court has personal jurisdiction over Defendant Ross because he resides in Fort Lauderdale, Florida and practices law in Broward County, Florida.

24.     Venue is proper in Broward County because Defendant Ross resides in Broward County, the key series of transactions or occurrences out of which Plaintiffs' causes of action arise occurred in Broward County, and Regions Bank has offices, agents, and representatives in Broward County.

## FACTS

### *Hackers perpetrate a fraud against Rising Phoenix and Tidal Basin, resulting in $29.5 million being transferred to Defendant Richard S. Ross's trust account at Defendant Regions Bank.*

25.     On or around February 23, 2021, Plaintiff Tidal Basin was engaged by the State of Florida's Division of Emergency Management to administer several aspects of Florida's COVID-19 response.

26.     As part of that project, Tidal Basin engaged MCI, a company specializing in customer contact centers and call agent staffing, as a subcontractor to, among other things, establish a high-volume call center and send SMS text messages to various groups of people in Florida at the State of Florida's direction. MCI satisfactorily completed the work for which it had been engaged.

27.     On or around October 4, 2021, Tidal Basin owed MCI $29,583,354.63 for those subcontracting services.

28.     Prior to October 4, 2021, without Plaintiffs' knowledge, the Hackers had initiated a plot to defraud Rising Phoenix/Tidal Basin of the funds owed to MCI.

29.     In furtherance of their fraudulent plot, the Hackers unlawfully gained access to the email account of an executive at Rising Phoenix and created spoof email addresses that allowed them to impersonate executives at both Rising Phoenix and MCI. As a result, the Hackers were able to impersonate MCI's CEO in email correspondence with Rising Phoenix/Tidal Basin and to impersonate Rising Phoenix's executives in email correspondence with MCI.

30.     Specifically, the Hackers illegally accessed the email account of Rising Phoenix's Vice President and Project Finance Chief (hereinafter, the "Rising Phoenix VP"), who handled many of the details of the subcontract with MCI, including payment processing. This allowed the Hackers to send emails from the Rising Phoenix VP's account and to read any emails he received

all without the Rising Phoenix VP's knowledge. On information and belief, the Hackers used this access to learn that a large payment from Rising Phoenix to MCI was due and to devise a scheme to misappropriate those funds.

31.     The Hackers created a spoof email address closely resembling the true email address of MCI's CEO. The address enabled them to impersonate Rising Phoenix/Tidal Basin in communications with MCI's CEO, who handled all payment-related communications with Rising Phoenix/Tidal Basin on MCI's behalf. The Hackers sent emails to Rising Phoenix/Tidal Basin with payment information that appeared to be from MCI's CEO. When Rising Phoenix's executives responded to those emails, the responses went to the spoof email account controlled by the Hackers, rather than to the MCI CEO's true email account.

32.     The Hackers simultaneously used their access to the Rising Phoenix VP's account to send emails to the true MCI executives regarding the payment and assuring them that it would soon be transferred. The MCI executives did not know they were corresponding with the Hackers.

33.     The Hackers also created a spoof email that enabled them to impersonate Rising Phoenix's President, who handled certain aspects of the MCI payment. The Hackers copied this account on emails that they sent from the Rising Phoenix VP's account to MCI executives. When MCI executives responded to the spoof emails, the responses went to the spoof email account controlled by the Hackers, rather than to Rising Phoenix's President's true email account.

34.     Upon information and belief, the Hackers regularly monitored the Rising Phoenix VP's email account, which allowed them to hide or delete incoming messages from MCI before the Rising Phoenix VP could see them.

35.     On or around October 5, 2021, the Hackers used the spoof email impersonating MCI's CEO to instruct the Rising Phoenix VP to send final payment for MCI's subcontracting

services via Automated Clearing House ("ACH") transfer to a Regions Bank account in MCI's name.

36.     Unbeknownst to Rising Phoenix and Tidal Basin, the account number the Hackers provided did not belong to MCI.

37.     In reality, the account number provided was for an Interest on Trust Account ("IOTA") that belonged to and was controlled by Defendant Ross.

38.     IOTA accounts are trust accounts regulated by the Florida Bar. Each Florida-licensed attorney is required to be familiar with and comply with the Rules Regulating Trust Accounts, as adopted by the Supreme Court of Florida. *See* R. Regulating Fla. Bar 4-1.15; R. Regulating Fla. Bar 5-1.1 cmt.

39.     On or around October 6, 2021, pursuant to the Hackers' fraudulent instructions, Rising Phoenix/Tidal Basin initiated the transfer of $29,583,354.63 from Tidal Basin's account at NBT to Defendant Ross's IOTA account at Regions Bank, which Rising Phoenix and Tidal Basin believed belonged to MCI. According to Regions Bank, the "branch of account" where the account was located is in Fort Lauderdale, Florida.

40.     The transfer instructions identified MCI as the account holder by name but specified the account number associated with Ross's IOTA account.

41.     On information and belief, when a transfer of funds exceeds a certain amount—which is not specifically known to Plaintiffs, but which is less than $29.5 million—Regions Bank's internal policies, procedures, and/or protocols require it to evaluate whether the account specified in the transfer instructions is held by the person or entity the transfer instructions identify as the beneficiary and to take other precautions assessing the transaction.

42.    The funds transferred to Ross's account exceeded that dollar threshold, triggering Regions Bank's internal policies and procedures and requiring Regions Bank's enhanced scrutiny.

43.    The funds transfer was directed to Ross's account, but the transfer instructions named a transfer beneficiary who was not Ross.

44.    On information and belief, if Regions Bank had reasonably complied with its internal policies, procedures, and/or protocols, it would have seen the discrepancy between the account number and beneficiary's name identified in the transfer instructions.

45.    Regions Bank thus had notice and knew of the discrepancy, either because an individual noticed it, or Regions Bank failed to exercise required due diligence and ascertain that there was a mismatch between the listed account number and account name before it accepted the $29.5 million transfer and improperly channeled it into Ross's account.

***After the funds arrive in Defendant Richard S. Ross's IOTA account, Regions Bank ignores the discrepancies and notifications in the transfer and allows Ross to initiate a series of wire transfers, dissipating the funds to bank accounts mostly outside of the United States.***

46.    On or around October 7, 2021, an individual purporting to be Richard S. Ross contacted Regions Bank by telephone on at least two occasions, attempting to access the IOTA account to which the funds had been sent. Regions Bank recorded the calls.

47.    The caller asked a Regions Bank employee about the status of funds in his purported personal account and in the IOTA account to which Rising Phoenix's funds had been transferred.

48.    The caller, who spoke English with a pronounced accent, misstated the name on the account and was unable to immediately recall his purported birthdate when asked to verify it. The caller also could not verify the telephone number associated with the IOTA account.

49.    Ross has reported to law enforcement that he did not make the telephone calls described above.

9

50.     After receiving these suspicious calls, Regions Bank neither placed a hold on the account nor launched an investigation into the calls, the IOTA account, or the recently deposited funds.

51.     Regions Bank did not contact NBT or law enforcement to inquire into the circumstances of the transfer to Ross's IOTA account or whether it was appropriate for the substantial amount of funds—which exceeded Regions Bank's requirement for additional verification—to reside in this IOTA account.

52.     Regions Bank failed to identify that the IOTA account was actually or potentially subject to fraud.

53.     On information and belief, Regions Bank was required by internal policies, procedures, and/or protocols to take certain crime-prevention and/or fraud-prevention measures, which should have been or were triggered by the facts described herein.

54.     Regions Bank failed to take any such measures.

**_Defendant Richard S. Ross fails to conduct reasonable diligence and transfers the $29.5 million to various foreign bank accounts._**

55.     Ross later admitted to law enforcement that he was aware the $29,583,354.63 was deposited into his IOTA account, and he claimed to believe the funds were deposited as the result of a legitimate business transaction for an alleged client.

56.     On information and belief, Ross's customary practice of law does not involve transactions entailing the transfer of eight-figure sums to his IOTA account.

57.     On information and belief, Ross did not provide legal services before the transfer that would have led a reasonable attorney exercising appropriate diligence to believe that an eight-figure sum would be transferred to his IOTA account and then shortly after transferred to several foreign banks for legitimate reasons.

58.     When an attorney receives funds in an IOTA account in which a client or third person has an interest, the attorney must promptly notify the client or third person. R. Regulating Fla. Bar 5-1.1(e). Ross never notified Rising Phoenix or Tidal Basin that their funds had been deposited into his IOTA account.

59.     When an attorney's IOTA account contains an unidentifiable accumulation of funds, those funds must be held for their missing owners and so designated. R. Regulating Fla. Bar 5-1.1(i). Ross neither held the funds for Rising Phoenix and Tidal Basin nor designated them as belonging to an unidentified owner.

60.     If an attorney is unaware of the beneficial owner of an unidentifiable accumulation of funds, he must make a diligent search and inquiry to determine the beneficial owner of the funds or to identify the owner's address. *Id.* Ross never made a diligent inquiry to determine the beneficial owner of the funds or to identify the owner's address.

61.     If diligent inquiry fails to identify the missing owner or identify the funds, such funds must be disposed of as provided under applicable Florida law, *id.*, namely Chapter 717 of the Florida Statutes, which requires that the funds be delivered into the custody of Florida's Department of Financial Services. Ross failed to dispose of the funds in accordance with applicable Florida law.

62.     Instead, Ross directed a series of outgoing wire transfers from the IOTA account.

11

63.     From on or about October 12 to October 19, 2021, at Ross's instruction, Regions Bank executed or attempted to execute a series of wire transfers, disseminating the $29.5 million from Ross's IOTA account to various banks, mostly in Mexico, as reflected in the below table:

| Date | Amount | Destination Bank |
|------|--------|------------------|
| 10/12/2021 | $980,000.00 | Banco Monex, Mexico |
| 10/12/2021 | $980,000.00 | HSBC Mexico Institucion DE B |
| 10/13/2021 | $4,200,000.00 | HSBC Mexico Institucion DE B |
| 10/15/2021 | $4,800,000.00 | Banco Monex, Mexico |
| 10/15/2021 | $5,800,000.00 | HSBC Mexico Institucion DE B |
| 10/15/2021 | $8,000,000.00 | Scotiabank Inverlat, Mexico |
| 10/18/2021 | $4,000,000.00 | Banco Monex, Mexico |
| 10/18/2021 | $4,000,000.00 | HSBC Mexico Institucion DE B |
| 10/19/2021 | $1,500,000.00 | Santander Bank, N.A. Wilmington, DE |
| 10/19/2021 | $1,500,000.00 | Cathay Bank, Los Angeles, CA |
| 10/19/2021 | $364,755.00 | BBVA Bancomer, SA Payment |

64.     These outgoing payments flowed to accounts at six banks registered to three separate beneficial owners.

65.     Ross's IOTA account received a single incoming transfer of $29.5 million—a sum that, on information and belief, is significantly larger than the sums that account usually receives.

66.     Ross has stated under oath that he authorized all of the foregoing transactions out of his IOTA account without first verifying the source of those funds.

67.     Ross has stated under oath that he believed that the $29.5 million was being transferred to his IOTA from the account of his client's business partner. If Ross had consulted the records of his IOTA account before authorizing the outgoing transactions, he would have seen that the $29.5 million came from Tidal Basin.

68.     On information and belief, it was inconsistent with Ross's account history and law practice to receive a large transfer of funds into his IOTA account and then quickly transfer the funds in chunks to various banks, including foreign banks.

12

69.     On information and belief, Ross did not undertake reasonable diligence to determine whether the recipients were authorized or appropriate recipients of the funds, nor did he undertake reasonable diligence to determine whether and why the money supposedly owed to his client should be sent to six separate accounts, registered to three separate beneficial owners, in two countries.

***Regions Bank continues to disseminate funds and fails to take preventive measures even after Scotiabank rejects one of the transfers.***

70.     On October 15, 2021, Scotiabank rejected Regions Bank's attempt to transfer $8 million to one of its accounts.

71.     Scotiabank notified Regions Bank that it was rejecting the transfer due to "internal policy," and on information and belief, Regions Bank failed to inquire with Scotiabank as to why the funds were rejected.

72.     Instead, just three days later, on October 18, 2021, Regions Bank executed a request by Ross to break the $8 million transfer into two $4 million transfers to two Mexican banks.

73.     Regions Bank never took preventive measures to safeguard funds in its custody despite obvious signs of malfeasance, including the mismatch between account number and name identified in the transfer instructions, the size of the incoming transfer to Ross's account, the suspicious phone calls, the series of smaller outgoing transfers to numerous foreign banks, and the rejection by Scotiabank of one attempted transfer, followed by a re-transfer of the same amount to two different accounts. Among other things, each of these circumstances was inconsistent with Ross's IOTA account's history and should have triggered additional inquiry by Regions Bank to prevent misappropriation of funds in the IOTA account.

*__The fraud is discovered, and the United States Secret Service launches an investigation.__*

74.     From approximately October 5 to October 26, 2021, the Hackers engaged in a scheme to avoid detection of their fraud.

75.     The Hackers used their control of the Rising Phoenix VP's email account and the spoofed Rising Phoenix and MCI email accounts to prevent Rising Phoenix executives from seeing correspondence from MCI's CEO concerning the status of the (diverted) payment, which would have alerted Rising Phoenix and Tidal Basin to the fraud. The Hackers also successfully deceived MCI by impersonating Rising Phoenix executives and assuring MCI that the payment from Rising Phoenix/Tidal Basin was forthcoming, even though the Hackers had already induced Rising Phoenix/Tidal Basin to send the funds to the account controlled by Ross.

76.     Rising Phoenix and Tidal Basin discovered the fraud on October 26, 2021, when MCI's CEO placed a telephone call to Rising Phoenix to inquire about the missing payment.

77.     Rising Phoenix and Tidal Basin then reported the hacking and the fraud to law enforcement. The United States Secret Service launched an investigation into the fraud. In connection with the investigation, on November 16, 2021 and on January 6, 2022, the United States seized funds totaling $4,183,402.74 and $722,327.52, respectively, from Ross's IOTA account and Regions Bank's General Ledger pursuant to seizure orders issued by the United States District Court for the Northern District of New York, the judicial district in which Rising Phoenix and Tidal Basin are headquartered.

78.     On January 12, 2022, Rising Phoenix paid MCI the full amount Rising Phoenix/Tidal Basin owed MCI for subcontracting services.

79.    Ross subsequently filed a claim in the Northern District of New York action referenced above asserting, among other things, that roughly $1.2 million of the funds seized by the government came from the sale of his own property.

80.    The Rules Regulating the Florida Bar prohibit commingling of a lawyer's personal funds with money held in trust in an IOTA account. *See* R. Regulating Fla. Bar 5-1.1(a)(1).

81.    Regardless of the origin of the $1.2 million Ross claims as proceeds from a personal real estate sale and whether they were appropriately held in the IOTA account, those funds were commingled with Rising Phoenix/Tidal Basin funds in an account that was used to defraud Rising Phoenix and Tidal Basin.

82.    To date, the government has seized $4,905,730.26, including the $1,213,113.11 claimed by Defendant Ross.

83.    Rising Phoenix and Tidal Basin have recovered nothing to date, although they have filed a claim in the above-referenced action filed in the Northern District of New York.

84.    Prior to filing this complaint, counsel for Plaintiffs engaged in pre-litigation settlement talks with counsel for Regions Bank, which were expressly covered by section 90.408 of the Florida Rules of Evidence and Federal Rule of Evidence 408. Plaintiffs' counsel shared with Regions Bank's counsel a copy of a near-final draft of the instant complaint, which included a header on every page in red, all-caps font that stated "SUBMITTED PURSUANT TO FLA. STAT § 90.408 (2022); FED. R. EVID. 408." Then, without notice, Regions Bank sued Rising Phoenix, Tidal Basin, and NBT Bancorp Incorporated on September 8, 2022 in the District Court for the Northern District of New York, seeking declaratory judgment on claims based entirely on its protected settlement conversations with Plaintiffs' counsel and the draft complaint Plaintiffs had shared pursuant to section 90.408 of the Florida Rules of Evidence and Federal Rule of Evidence

408. Regions Bank's complaint omitted critical aspects of the parties' dispute and failed to name Ross as a party. Regions Bank filed a separate complaint based on the same facts in the Northern District of New York against NBT Bank, N.A., which has been consolidated with the first action it filed in the Northern District of New York. Plaintiffs have moved to dismiss or stay the proceedings in the Northern District of New York because this comprehensive action is a more appropriate vehicle to resolve the parties' dispute.

### COUNT I: VIOLATION OF N.Y. UCC Law § 4-A-207 (McKinney 2022)
*By Rising Phoenix, Tidal Basin, and NBT Against Regions Bank*

85.     Plaintiffs incorporate by reference paragraphs 1 through 84.

86.     Article 4A of the Uniform Commercial Code "governs the procedures, rights, and liabilities arising out of commercial electronic funds transfers." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998). ACH transfers like the one at issue in this action are further governed by the Nacha Operating Rules. *See* Nacha Operating R. § 1.1.

87.     Under Article 4A of the Uniform Commercial Code—which has been adopted in all 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands—and the Nacha Operating Rules, New York law governs the parties' rights and liabilities arising out of the ACH transfer at issue here. *See* N.Y. UCC Law § 4-A-507(2); Nacha Operating R. § 1.8.

88.     New York Uniform Commercial Code Law section 4-A-207 governs funds transfers in which a payment order received by the beneficiary's bank (here, Regions Bank) identifies the beneficiary both by name and by a bank account number, and the account name and account number identify different persons. *See* N.Y. UCC Law § 4-A-207 (McKinney 2022).

89.     Pursuant to section 4-A-207(2)(b), with an exception inapplicable here, if the beneficiary's bank knows that the name and account number of a payment order identify different

persons, no person has rights as beneficiary, and the beneficiary's bank cannot accept the funds transfer.

90.     Regions Bank had knowledge that there was a mismatch between the account number and beneficiary's name identified in the transfer instructions, either because it was brought to the attention of an individual conducting the transaction or because it would have been brought to such an individual's attention had Regions Bank exercised due diligence by complying reasonably with its own internal policies, procedures, and/or protocols for accepting transfers above a certain dollar threshold.

91.     Because Regions Bank had such knowledge, no person had rights as beneficiary, and acceptance of the payment order should not have occurred. N.Y. UCC Law § 4-A-207(2)(b) (McKinney 2022). Therefore, Rising Phoenix and Tidal Basin were not obliged to pay the amount of the order, and NBT is entitled to a refund of the funds remitted to Regions Bank, in order to reimburse those funds to Rising Phoenix and Tidal Basin. *See* N.Y. UCC Law § 4-A-402(4) (McKinney 2022).

## **COUNT II: BREACH OF FIDUCIARY DUTY**
*By Rising Phoenix and Tidal Basin Against Richard S. Ross*

92.     Plaintiffs incorporate by reference paragraphs 1 through 84.

93.     Defendant Ross owed a fiduciary duty to Rising Phoenix and Tidal Basin as soon as their funds were transferred into his IOTA account. *See* R. Regulating Fla. Bar 5-1.1, cmt.

94.     Ross breached that fiduciary duty by various acts, including:

    i.     Failing to promptly notify Rising Phoenix or Tidal Basin that their funds had been transferred into his IOTA account;

    ii.     Failing to safeguard Rising Phoenix and Tidal Basin's funds;

17

iii.   Failing to make a diligent search and inquiry to determine the beneficial owner of the funds, if he was unaware that Rising Phoenix or Tidal Basin was the beneficial owner of the funds; and/or

iv.   Failing to dispose of the funds in a lawful manner and instead disbursing the funds to third parties in contravention of the Rules Regulating the Florida Bar and without lawful justification.

95.   Ross's breach of his fiduciary duty to Rising Phoenix and Tidal Basin was an actual and proximate cause of Rising Phoenix and Tidal Basin's monetary injury. But for Ross's breach of his duty, Rising Phoenix and Tidal Basin's funds would not have been disbursed to various entities that were not lawfully entitled to receive the funds, and as alleged herein, Ross's conduct was at least a substantial factor in bringing about Rising Phoenix and Tidal Basin's injury.

## COUNT III: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
*By Rising Phoenix and Tidal Basin Against Regions Bank*

96.   Plaintiffs incorporate by reference paragraphs 1 through 84.

97.   As set forth above, Ross breached his fiduciary duty to Rising Phoenix and Tidal Basin and thereby caused Rising Phoenix and Tidal Basin's injuries.

98.   Regions Bank knew of the breach because, among other things, it knew the following facts:

i.   The transfer instructions at issue named MCI as the transfer's recipient but identified Ross's IOTA account number;

ii.   The sum of the funds instructed to be transferred into Ross's IOTA account at Regions Bank was more than $29.5 million, which required Regions Bank to evaluate whether the funds were payable to an account held by the actual person

18

or entity the transfer instructions set out as the beneficiary and which was inconsistent with the sums Ross customarily received in his IOTA account;

iii.    On October 7, 2021, Regions Bank received and recorded two obviously suspicious telephone calls from someone purporting to be Ross and attempting to access funds in the IOTA account;

iv.    Less than one week later, Ross began initiating numerous wire transfers of the fraudulently obtained funds to accounts registered to three separate beneficial owners at six separate banks mostly located outside of the United States; and

v.    On October 15, 2021, Scotiabank rejected an attempt to transfer $8 million of the fraudulently obtained funds. Nevertheless, just three days later Regions Bank executed Ross's request to break the $8 million into two $4 million transfers to different banks.

99.    Regions Bank substantially assisted or encouraged Ross's breach of fiduciary duty by affirmatively assisting Ross's breach and/or failing to act when required to do so, which enabled the breach to occur. Specifically, Regions Bank, among other things:

i.    Channeled the fraudulently obtained funds into Ross's account;

ii.    Failed to take fraud- or crime-prevention measures; and

iii.    Executed the outgoing wire transfers to various outside banks, including mostly banks in Mexico, even after Scotiabank rejected one of the attempted transfers.

100.    Regions Bank's assistance in Ross's breach of fiduciary duty to Rising Phoenix and Tidal Basin was an actual and proximate cause of Rising Phoenix and Tidal Basin's monetary injury. But for Regions Bank's assistance in Ross's breach of his duty, Rising Phoenix and Tidal Basin's funds would not have been disbursed to various entities that were not lawfully entitled to

19

receive the funds, and as alleged herein, Regions Bank's conduct was at least a substantial factor in bringing about Rising Phoenix and Tidal Basin's injury.

<div align="center">

**COUNT IV: NEGLIGENCE**

*By Rising Phoenix and Tidal Basin Against Regions Bank and Regions Financial*

</div>

101.    Plaintiffs incorporate by reference paragraphs 1 through 84.

102.    Regions Bank and Regions Financial owed duties of reasonable care to Rising Phoenix and Tidal Basin arising from, among other things, judicial precedent and the general facts of the case, including the facts that:

      i.    Regions Bank was acting as an "eligible institution" under the Rules Regulating the Florida Bar. *See* R. Regulating Fla. Bar 5-1.1(g)(1)(D), (g)(5);

      ii.    Regions Bank accepted the transfer of funds from NBT;

      iii.    Regions Bank operated Ross's IOTA account;

      iv.    Regions Bank knew or ought to have known that Ross owed a fiduciary duty to Rising Phoenix and Tidal Basin, and Regions Bank knew or ought to have known that one of its customers, Ross, was misappropriating Rising Phoenix/Tidal Basin's funds;

      v.    Regions Financial conducts its banking operations through Regions Bank; and

      vi.    Regions Financial wholly owns Regions Bank and, on information and belief, establishes, monitors, and enforces the policies and practices of Regions Bank.

103.    Regions Bank and Regions Financial breached their duty of care to Rising Phoenix and Tidal Basin by various acts, including:

      i.    Ignoring clear indications that the funds were the object of probable fraud;

<div align="center">20</div>

    ii.    Failing to or inadequately evaluating whether the account number identified in the transfer instructions was held by the actual person or entity the wire instructions identified as the beneficiary;

    iii.    Failing to investigate or otherwise safeguard Rising Phoenix/Tidal Basin's funds when, in stark contrast to previous activity in the account, Ross's IOTA account received an incoming transfer of more than $29.5 million shortly before the funds were disbursed in a series of transactions to several banks that were primarily outside of the United States;

    iv.    Failing to investigate or otherwise safeguard Rising Phoenix/Tidal Basin's funds after receiving and recording at least two suspicious telephone calls placed by an individual purporting to be Ross;

    v.    Failing to investigate or otherwise safeguard Rising Phoenix/Tidal Basin's funds after Scotiabank rejected an $8 million transfer, and instead allowing Ross to promptly transfer an equivalent amount of money to two different banks; and

    vi.    Failing to follow internal and external procedures and practices in light of numerous red flags.

104.    Regions Financial also breached its duty of care by failing to implement and supervise procedures at its wholly owned subsidiary, Regions Bank, that would have prevented the acceptance and ultimate diversion of Rising Phoenix/Tidal Basin's funds, as described herein.

105.    Regions Bank's and Regions Financial's breaches caused Rising Phoenix and Tidal Basin's injury.

## COUNT V: NEGLIGENCE

*By Rising Phoenix and Tidal Basin Against Richard S. Ross*

106.    Plaintiffs incorporate by reference paragraphs 1 through 84.

107.    Ross also owed a duty of reasonable care to Rising Phoenix and Tidal Basin arising

from judicial precedent and the general facts of the case, including the facts that Ross:

    i.    Was a licensed attorney controlling an IOTA account regulated by the Rule 5-

        1.1 of the Rules Regulating the Florida Bar;

    ii.    Accepted Rising Phoenix/Tidal Basin's funds into his IOTA account;

    iii.    Actually or impliedly misrepresented that he knew the funds' origin and that

        they lawfully arrived in his IOTA account; and

    iv.    Initiated numerous wire transfers to disperse the fraudulently obtained funds to

        bank accounts primarily outside of the United States without consulting with

        Rising Phoenix or Tidal Basin.

108.    Ross breached that duty by various acts, including:

    i.    Operating his IOTA account in a manner that violated the Rules Regulating the

        Florida Bar, including by failing to promptly notify Rising Phoenix or Tidal

        Basin that their funds had arrived in his IOTA account and/or failing to make a

        reasonable and diligent search and inquiry to determine the beneficial owner of

        the funds;

    ii.    Directing Regions Bank to transfer Rising Phoenix/Tidal Basin's funds to

        various banks, including mostly banks outside of the United States, without

        taking reasonable care to ensure that those entities were lawfully entitled to the

        funds, or with knowledge or in reckless disregard of the fact that those entities

        were not lawfully entitled to the funds;

      iii.     Representing that he knew the origin of the funds, that the funds arrived in his account by lawful means, and that the funds were related to his legal practice; and

      iv.     Responding to Scotiabank's rejection of an $8 million transfer by breaking the funds into two separate $4 million transfers to two other Mexican banks, rather than undertaking any belated due diligence.

109.    Ross's breaches caused Rising Phoenix and Tidal Basin's injury.

## COUNT VI: GROSS NEGLIGENCE
*By Rising Phoenix and Tidal Basin Against Regions Bank*

110.    Plaintiffs incorporate by reference paragraphs 1 through 84.

111.    Regions Bank was so reckless or wanting in care that its conduct constituted a conscious disregard or indifference to the rights of Rising Phoenix and Tidal Basin, and Regions Bank undertook a course of conduct that a reasonable and prudent person would know would probably and most likely result in injury to property.

112.    Regions Bank breached that standard of care by taking actions, including those described in paragraphs 46 through 54 and paragraphs 70 through 73, which exhibited a conscious disregard or indifference to the property rights of Rising Phoenix and Tidal Basin.

113.    Under the circumstances alleged herein, a reasonable and prudent entity would know that failing to safeguard Rising Phoenix/Tidal Basin's funds under the circumstances would probably and most likely result in injury to property. Plaintiffs subsequently suffered injury to property and now seek damages to recover the lost funds.

## COUNT VII: GROSS NEGLIGENCE
*By Rising Phoenix and Tidal Basin Against Richard S. Ross*

114.    Plaintiffs incorporate by reference paragraphs 1 through 84.

115.     Ross was so reckless or wanting in care that his conduct constituted a conscious disregard or indifference to the rights of Rising Phoenix and Tidal Basin, and Ross undertook a course of conduct that a reasonable and prudent person would know would probably and most likely result in injury to property.

116.     Ross breached that standard of care by taking actions, including those described in paragraphs 55 through 69, which exhibited a conscious disregard or indifference to the property right of Rising Phoenix and Tidal Basin.

117.     Under the circumstances alleged herein, a reasonable and prudent person would know that these actions would probably and most likely result in injury to property. Plaintiffs subsequently suffered injury to property and now seek damages to recover the lost funds.

## COUNT VIII: FRAUD
*By Rising Phoenix and Tidal Basin Against Richard S. Ross*

118.     Plaintiffs incorporate by reference paragraphs 1 through 84.

119.     As alleged herein, the Hackers executed a fraudulent scheme to deprive Rising Phoenix and Tidal Basin of their funds.

120.     On information and belief, Ross knew of the fraudulent scheme, as evidenced by his conduct, including the fact that Ross requested that Regions Bank disburse the funds to various banks in Mexico shortly after the funds unlawfully arrived in his IOTA account.

121.     Ross actively participated in and/or orchestrated the fraudulent scheme. Ross allowed Rising Phoenix/Tidal Basin's fraudulently obtained funds to be deposited into his IOTA account. He then failed to disclose to Rising Phoenix and Tidal Basin the material fact that their funds were in his IOTA account or that he was disbursing their funds to other entities in breach of his fiduciary duty to Rising Phoenix and Tidal Basin. In so doing, and as alleged and described herein, Ross made misrepresentations and/or omissions to Rising Phoenix and Tidal Basin.

122.    Ross knew the misrepresentations and/or omissions he made to Rising Phoenix and Tidal Basin were false when he made them, or he made the misrepresentations and/or omissions in reckless disregard of their falsity.

123.    Ross intended for Rising Phoenix and Tidal Basin to rely on and act on his misrepresentations and/or omissions.

124.    Rising Phoenix and Tidal Basin did believe in the truth of Ross's misrepresentations and/or omissions.

125.    Ross's misrepresentations and/or omissions were an actual and proximate cause of Rising Phoenix and Tidal Basin's injury. Due to their detrimental reliance upon Ross's misrepresentations and/or omissions, Rising Phoenix and Tidal Basin subsequently suffered injury to property and now seek damages to recover the lost funds.

## COUNT IX: CONSTRUCTIVE FRAUD
### *By Rising Phoenix and Tidal Basin Against Richard S. Ross*

126.    Plaintiffs incorporate by reference paragraphs 1 through 84.

127.    Even if Ross had no actual intent to defraud, Ross still owed a fiduciary duty to Rising Phoenix and Tidal Basin, violated that duty by making misrepresentations and/or omissions, and intended for Rising Phoenix and Tidal Basin to rely on his misrepresentations and/or omissions.

128.    Rising Phoenix and Tidal Basin subsequently relied on Ross's misrepresentations and/or omissions and suffered injury to property as an actual and proximate result of Ross's actions or inaction.

## COUNT X: FRAUDULENT CONCEALMENT
### *By Rising Phoenix and Tidal Basin Against Richard S. Ross*

129.    Plaintiffs incorporate by reference paragraphs 1 through 84.

130. As alleged and described above, Ross owed a fiduciary duty to Rising Phoenix and Tidal Basin, which charged Ross with various obligations described above, including promptly notifying Rising Phoenix and Tidal Basin that their funds were in his IOTA account and safeguarding the funds.

131. Ross abused that fiduciary relationship or took unconscionable advantage of Rising Phoenix and Tidal Basin through numerous acts of concealment, including concealing his awareness of the Hackers' plot, his awareness that the money was not lawfully in his IOTA account, and/or his awareness that his decision to disburse the money to various entities was unlawful and would deprive Rising Phoenix and Tidal Basin of a vast sum of money.

132. Ross's concealment(s) caused or induced Rising Phoenix and Tidal Basin to not discover the Hackers' scheme and to not take actions that could have prevented the disbursement of their funds and was an actual and proximate cause of their injury.

## COUNT XI: AIDING AND ABETTING FRAUD
### *By Rising Phoenix and Tidal Basin Against Richard S. Ross*

133. Plaintiffs incorporate by reference paragraphs 1 through 84.

134. As alleged and described herein, there existed a fraud to deprive Rising Phoenix and Tidal Basin of their funds.

135. Ross had knowledge of the fraud, as demonstrated by, among other things, his failure to verify the source of the funds, his representations that Rising Phoenix/Tidal Basin's funds were transferred into his IOTA account for legitimate business reasons related to his law practice, and his requests to Regions Bank to disburse the funds.

136. Ross provided substantial assistance to the Hackers to advance the commission of the fraud by, among other things, allowing the funds to be deposited into his IOTA account, failing

to notify Rising Phoenix and Tidal Basin that their funds had been deposited into his IOTA account, and initiating the disbursement of the funds.

137.    Ross's substantial assistance to the Hackers as alleged and described herein was a proximate cause of Rising Phoenix and Tidal Basin's injury.

## COUNT XII: CONVERSION
*By Rising Phoenix and Tidal Basin Against Richard S. Ross*

138.    Plaintiffs incorporate by reference paragraphs 1 through 84.

139.    As alleged and described herein, Ross acquired possession of Rising Phoenix/Tidal Basin's property, and his unauthorized acts, including directing the transfer of the funds to various entities in derogation of his duties under the Rules Regulating the Florida Bar, permanently or for an indefinite period of time deprived Rising Phoenix and Tidal Basin of possession of their property.

140.    Rising Phoenix and Tidal Basin subsequently suffered injury to property and now seek damages to recover the lost funds.

## PRAYER FOR RELIEF

Plaintiffs seek compensatory damages, costs, prejudgment and post-judgment interest, attorneys' fees, and any other relief the Court deems just and appropriate. Plaintiffs reserve the right to seek punitive damages and disgorgement of ill-gotten gains.

## JURY DEMAND

Plaintiffs demand a jury trial on all counts.

Dated: April 21, 2023                       Respectfully submitted,

                                            ZUCKERMAN SPAEDER LLP

                                            */s/ Nathan M. Berman*
                                            Nathan M. Berman (Fla. Bar No. 0329230)
                                            101 East Kennedy Blvd., Suite 1200

Tampa, FL 33602
Tel.: 813-221-1010
nberman@zuckerman.com

Aitan D. Goelman (*pro hac vice* forthcoming)
Casey Trombley-Shapiro Jonas
(*pro hac vice* forthcoming)
Bryan M. Reines (*pro hac vice* forthcoming)
Trillium E. Chang (*pro hac vice* forthcoming)
1800 M Street NW, Suite 1000
Washington, DC 20036
Telephone: 202.778.1800
Facsimile: 202.822.8106
agoelman@zuckerman.com
cjonas@zuckerman.com
breines@zuckerman.com
tchang@zuckerman.com

*Counsel for Plaintiffs Rising Phoenix Holdings
Corporation and Tidal Basin Government
Consulting, LLC*

**LIEBLER, GONZALEZ & PORTUONDO**

*/s/ J. Randolph Liebler*
J. Randolph Liebler (Fla. Bar No. 507954)
Dora F. Kaufman, Esq. (Fla. Bar No. 0771244)
Courthouse Tower
44 West Flagler Street, Suite 2500
Miami, FL 33130
Telephone: 305.379.0400
Facsimile: 305.379.9626
jrl@lgplaw.com
dfk@lgplaw.com
service@lgplaw.com

*Counsel for Plaintiff NBT Bank, N.A.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 21, 2023, a true and correct copy of the foregoing has

been filed via the Florida E-Filing portal system which will provide copies to all parties of record.

/s/ Nathan M. Berman
Nathan M. Berman